FARMERS AND MERCHANTS BANK ET AL. v. FEDERAL RESERVE
BANK OF RICHMOND, VIRGINIA.

(Filed 24 May, 1922.)

1. **Banks and Banking—Federal Reserve Bank—Nonmember Bank—Par
Clearance.**

By amendments, the Federal Reserve Act, under which the various
Federal Reserve Banks were organized, was changed to allow these banks
to receive from their member banks checks and drafts on nonmember
banks within their respective territory, so as to perfect their reserve
system, and it is required that no charge for the payment of the checks
and drafts, and the remittances therefor by exchange or otherwise, shall
be made against the Federal Reserve Bank: *Held*, while nonmember
banks within the territory may require these papers to be presented at
their institutions to receive the full amount of their face in money, they
are without authority to remit for checks sent them by exchange drafts,
and in consideration of their waiver of direct presentation demand a
discount and thus remit a less amount.

2. **Same—State Statutes—Conflict of Laws—Constitutional Law.**

A state statute which permits a nonmember of a Federal Reserve Bank
to pay by draft, upon its exchange deposit, a note or draft for collection
sent through the Federal Reserve Bank and ·charge a fee for the remit-
tance, being in conflict with the Federal Reserve Act, is not enforceable,
the latter act' controlling under the provisions of the U. S. Constitution,
Art. VI., sec. 2, and the laws made in pursuance thereof, in effect that
the Federal Constitution and statutes shall be the supreme law, and bind-
ing upon the judges in every state, anything in the State Constitution and
State laws to the contrary notwithstanding.

ADAMS, J., did not sit or take part in the determination of this case.

APPEAL by defendants from *Webb, J.,* at February Term, 1922, of
UNION.

This action was brought by thirteen banks and trust companies organ-
ized under the laws of this State which are not members of the Federal
Reserve system against the Federal Reserve Bank of Richmond, Va., to
obtain an injunction to prevent the Federal Reserve Bank from refusing
to accept exchange drafts drawn by the plaintiffs on their reserve de-
posits in payment for checks presented at the counter of plaintiff banks,
and from returning as dishonored checks drawn by various depositors
upon the plaintiff banks which had been presented at their counters by
the Federal Reserve Bank of Richmond, but for which the plaintiffs
had tendered drafts drawn by them upon their respective reserve
depositories. A temporary restraining order was awarded in accordance
with the prayer of the complaint. The action having been brought by
said banks for the benefit of themselves and such other like institutions
who might join in the suit, and the restraining order providing that all

such institutions ·might become plaintiffs in the action, and have the benefit of said restraining order, some 265 State banks and trust companies have become parties plaintiff, as appears from the record.

By agreement between counsel trial by jury was waived, and by consent the judge found the facts, and upon the said finding of the facts adjudged:

1. That the defendant Federal Reserve Bank of Richmond is hereby enjoined from refusing to accept exchange drafts when tendered by the plaintiff banks in payment of checks drawn on them under the option given said banks under provisions of chapter 20, Laws of North Carolina, ratified 5 February, 1921.

2. The said defendant is hereby enjoined from returning as dishonored any check, payment for which in exchange drafts by plaintiff banks, or either of them, has been tendered under the provisions of said act, and the defendant refuses to accept the same.

3. The said defendant is likewise enjoined from protesting for nonpayment any check, payment for which in exchange drafts by plaintiff banks, or either of them, has been tendered under the provisions of said act and defendant refuses to accept the same.

4. The said defendant is likewise enjoined from publication, or authorizing the publication, of the name of any of the plaintiff banks, literally or by inclusion, in any list or other publication designed for circulation among banking institutions generally, regardless of the name employed to designate such list or publication unless and until the bank thus published or included shall have previously given its consent to such publication.

Appeal by the defendant.

*Alex. W. Smith and Stack, Parker & Craig for plaintiffs.*

*Connor & Hill, Henry W. Anderson, M. G. Wallace, and C. W. Tillett, Jr., for defendant.*

CLARK, C. J. The defendant Federal Reserve Bank of Richmond is a banking corporation, duly organized under the act of Congress, and especially under a certain act known as the Federal Reserve Act. It is one of the twelve Federal Reserve Banks which were organized under the terms of that act, and does business in accordance therewith, especially with the national banks and state member banks in the Fifth Federal Reserve District, which consists of a portion of the State of West Virginia, the whole of Maryland, the District of Columbia, Virginia, North Carolina, and South Carolina. Under the terms of this act the member banks, which are the national banks in the above mentioned district, and also certain state banks therein, which have qualified for and been ad-

mitted to membership in the Federal Reserve system, are required to keep and maintain with the Federal Reserve Bank of Richmond certain balances as reserves. The member banks create these balances by sending to the Federal Reserve Bank for collection checks or other instruments which they have received on deposit or for collection.

Since the business of all banking institutions consists largely in the handling of checks, it is clear that if the Federal Reserve Bank is to discharge efficiently its function as a reserve depository of its member banks, it must be able to collect their checks and other instruments, which are the ordinary means of making settlement of accounts and transmitting funds. When the Federal Reserve Banks were first organized they were not expressly empowered to accept for collection any check unless it was drawn upon a member bank or other Federal Reserve Bank. Since member banks receive checks not only upon other member banks, but also upon nonmember banks, and since the member banks, which include most of the larger banks of the country, acted as agencies through which the nonmember banks collected checks which they had received, it soon became evident that if the Federal Reserve Banks undertook to collect checks upon their member banks, but could not collect for member banks checks upon nonmember banks, a vast majority of checks upon member banks would pass through the Federal Reserve Banks, while checks on nonmember banks would be collected through other agencies.

As the amount of the checks which any bank receives upon others, and the amount of checks upon itself which it is compelled to pay, will usually be about the same, if a Federal Reserve Bank could handle all checks upon member banks, but could receive from member banks only a portion of the checks which they themselves receive, in the course of time the flow of checks would be unequal and the member banks would be placed at a great disadvantage in their efforts to maintain proper reserves. As a consequence, Congress, by the act of 7 September, 1916, and of 21 June, 1917, amended section 13 of the Federal Reserve Act and authorized any Federal Reserve Bank to receive for collection from its member banks "checks and drafts payable upon presentation in its district," thus removing any limitation upon the power of the Federal Reserve Bank to receive checks. From the very nature of a check no person is obliged to consider the drawee, or person upon whom it is drawn, before receiving it either as a holder or as an agent for collection.

Under the law, before the last mentioned amendment to the Federal Reserve Act, Federal Reserve Banks were required to receive checks upon member banks for collection at par, and were, therefore, compelled to require member banks to pay them the full face amount of all checks received. It is obvious that if member banks were compelled to pay the full face amount for all checks handled through the Federal Reserve

Banks, but such banks could not require nonmember banks to pay the full face amount on checks drawn upon them, a great inequality would result, because nonmember banks would, through the agency of their member bank correspondents, collect all checks upon any member bank at par; but would not pay to member banks checks drawn upon themselves at par. With this in view, Congress expressly provided, by the amendment of 21 June, 1917, that no charge for the payment of the checks and drafts and the remission therefor by exchange or otherwise shall be made against the Federal Reserve Bank.

In exercise of the power thus conferred, the Federal Reserve Bank of Richmond undertook to make arrangements with all nonmember banks in its district under which they would agree to remit at par for all checks which the Federal Reserve Bank received upon them. Prior to this time it had been the custom of many small banks, especially those located in remote sections, and thus free from competition, to refuse to remit the full face amount for checks drawn upon them which were sent through the mails, but they insisted that inasmuch as the check called for payment in money at their counters, and not for a remission by draft or otherwise, they could refuse to pay any check until it was presented at their counters, and that, therefore, if they undertook to remit for checks sent them by means of an exchange draft, they could, in consideration of their waiver of direct presentation demand a discount and remit, not the full face amount of checks, but some lesser sum. This is called an exchange charge for remitting for checks. The amount of this charge or discount exacted in consideration of payment by draft rather than in cash varied, but usually ran from 1/10 to 1/4 of 1 per cent upon the amount of all checks so paid.

Many nonmember banks refused to make any agreement to pay the Federal Reserve Bank at par for checks sent them for collection through the mails. The Federal Reserve Bank of Richmond was prohibited by the Federal Reserve Act from permitting any discount to be deducted from the face amount of checks which it held for collection. It sent representatives to the nonmember banks in North Carolina urging them to agree to remit at par, explaining that it believed that such practice would be for the mutual convenience of both parties, and that an insistence by the nonmember banks on their strict legal right to have a check presented for payment at their counters and to pay the same only in legal money would be an inconvenient and expensive method of dealing, not only to the Federal Reserve Bank of Richmond, but also to the nonmember banks. The nonmember banks were at the same time also notified that if they should insist upon their legal rights to require a presentation at their counters of all checks drawn upon them when handled by a Federal Reserve Bank, the Federal Reserve Bank would be compelled

to present the checks at their counters by means of duly authorized agents, but if compelled to take this course the Federal Reserve Bank would, after such presentation, refuse to waive its right to insist upon payment in legal tender money.

The Federal Reserve Bank made arrangements with certain residents of the towns in which various nonmember banks were situated to collect checks as its agents by means of personal presentation, or it sent an employee to such town to act as its agent.

On 15 November, 1921, the Federal Reserve Bank of Richmond gave notice that it would collect checks upon all nonmember banks in North Carolina by sending them through the mail if the bank would agree to pay the full amount due upon the checks, or by personal presentation by the agent if the nonmember bank refused to pay the full face amount of the check unless presented personally at its counter.

The Legislature of North Carolina, Laws 1921, ch. 20, authorized State banks in North Carolina to charge a fee not in excess of ⅛ of 1 per cent on remittances covering checks, or a minimum fee of 10 cents, and provided that in the event a Federal Reserve Bank, postoffice, or express company should present checks at the counters of the drawee bank and demand payment in cash, such drawee bank should be permitted to pay by means of a draft drawn upon its exchange deposit, excepting, however, checks payable to the State or to the Federal Government, and checks upon which the drawer had expressly designated to the contrary. The defendant bank, being advised that this statute was unconstitutional, presented the checks at the counter of the drawee bank, demanding the full amount due and returned the checks as dishonored when payment in money was refused. In returning checks which had been so presented, the Federal Reserve Bank of Richmond was careful to state that the check had been duly presented, and that payment in money at its face amount had been demanded, but had been refused, as the drawee bank claimed the right to discharge its obligation by its own draft.

The plaintiffs in this proceeding sought to restrain the Federal Reserve Bank of Richmond, from returning any check presented under these circumstances, and to require it to accept an exchange draft from the plaintiffs when any check had been thus presented to them, regardless where such exchange draft was payable, or whether or not the payment of it could be indefinitely postponed, as suggested in the argument, by a succession of such exchange drafts.

The plaintiffs, however, in addition to the economic effect of the Federal statute, which forbids the payment by the Reserve Bank of a charge for collection of checks, thus forcing, as they claim, all collection to be made through the Federal Reserve Banks, who can thus collect

without charge, made the further allegation that the defendant was undertaking to coerce the nonmember banks to abandon their right to charge for remitting for collection of checks upon them by saving up checks over a considerable period of time until they reached a large amount, and then demanding them at the counter with the probable effect of driving the bank into liquidation.

We need not consider this allegation, which was not only denied by the defendant, but which the court has found as a fact to be untrue, and the plaintiffs have taken no exception to such finding. It would be unnecessary to notice this proposition, but that such conduct was condemned by *Mr. Justice Holmes* in the case of the *American Bank and Trust Co. v. Federal Reserve Bank of Atlanta,* opinion filed 16 May, 1921. That decision was rendered upon a demurrer, on which, of course, the Court assumed that all the allegations of the bill and all reasonable inferences from them were true. The finding of fact on the trial in the present case eliminated this question entirely from our consideration.

The record and briefs in this case are voluminous, and the argument has been very elaborate and able, as the importance of the case demanded.

The Federal Reserve Bank, under the provisions of the Federal statute, has the right to receive for collection a check drawn upon a nonmember bank, or upon any other person within its district under the clear, unmistakable terms of the act.

The amendment made 21 June, 1917, to section 13 of the Federal Reserve Act provides that no charge for the payment of the checks and drafts and the remission therefor for exchange or otherwise shall be made against the Federal Reserve Banks.

The real question, therefore, presented for us is whether the Legislature of North Carolina can, by the act above mentioned, Laws 1921, ch. 20, interfere with this provision or regulation of the Federal corporation by a valid act of Congress by providing that a State bank need not pay its obligations in lawful money when checks, which upon their face are unconditional orders for the payment of money, are presented by Federal Reserve Banks.

The question may be presented concretely by this homely illustration: Suppose a farmer or merchant or other citizen of this State should send his check for $1,000, drawn on a bank in this State, in payment of a purchase of goods or other article, to New York. The person receiving it would place this check, in the ordinary course of business, to his credit in some bank in that city, which bank, in ordinary usage, would sometimes charge for collection a small sum based upon the interest for the time usually occupied in sending the check to the bank here, and the return of the collection to the bank in New York. As to this charge, which is a matter between the depositor and his bank, there is no con-

troversy here. When such check is sent to this State it has been not unusual heretofore for the bank here to make its remittance by exchange on New York, and to charge a fee for the service, but since the amendment to section 13 of the Federal Reserve Bank Act of 21 June, 1917, if such check from New York is remitted through the Federal Reserve Bank no charge can be made for exchange in remitting the proceeds, and if the bank here should remit anything less than the face of the check, $1,000, to the Federal Reserve Bank, the Federal Reserve Bank, in observance of the provisions of the above amendment to section 13, will refuse to accept it as payment, and notify its correspondent in New York why the check has been protested for nonpayment. The plaintiffs complain that the result is that all checks will be sent for collection through the Federal Reserve Banks system, but that is an economic result with which this Court has nothing to do. This may or may not have been the intention of Congress in making the amendment, but the Federal Reserve Bank Act has been held valid, and the amendment of 1917 was a valid regulation over the corporation created by it which Congress had the power to make. Conceding that Congress cannot require the bank here to remit without charge for its trouble, its statute prevents the Reserve Bank from allowing such charge (and the total of such charges if made throughout the country would amount annually to $135,000,000, and to over $1,000,000 in this State alone), and the Reserve Bank has no alternative except to demand payment of the face amount over the counter in legal tender, from which no state can release the paying bank without violation of the U. S. Constitution, and of its obligation to the drawer and the destruction of its business by the protests of the checks of its customers.

The statute of North Carolina, Laws 1921, ch. 20, was intended for the benefit of the State banks in this State, by authorizing them to continue to charge exchange for remitting by draft or otherwise for checks sent to them through the mails, but that policy, however desirable for such banks, is clearly in conflict with the valid constitutional provision of the Federal statute. No act of this State can authorize the drawee bank to pay less than the face amount of the check drawn upon it by its depositor or to remit its check in payment or pay it otherwise than in legal tender money. Nor can it require that the Federal Reserve Bank shall pay a fee, or that the bank here may remit less than the face value of the check when the Federal statute forbids such charge. It is true that the Federal Reserve Bank, as holder of the check, has no contract rights with the drawee bank until the check is presented, but as holder it can require payment of the face amount of the check in legal tender, and under the act of Congress it cannot pay a deduction from that face value by accepting a remittance to the Reserve Bank of a lesser amount.

The Reserve Bank always incloses with the check sent to the payee bank a stamped and addressed envelope for the check to be remitted in payment, which must be for the face amount of the check sent.

The Federal statute, being a regulation of the Federal corporation by Congress, the act of this State authorizing the paying bank here to exact exchange is in direct conflict with the duty imposed upon the Federal Reserve Bank by the act of Congress and the Reserve Bank is restricted by its duty to observe the provision of the Federal act and refuse to receive a check for less than the face amount of the check sent by it for collection. It is true it cannot enforce payment of the face amount except by personal presentation of the check at the counter of the paying bank, but it has a right to refuse a check sent to it by the paying bank for less than the full face amount, and to protest the check it has sent here for collection for nonpayment. The matter then becomes one between the drawer of the check and the paying bank who refuses to pay it.

The U. S. Constitution, Art. VI (sec. 2), provides that the Constitution of the United States, and the laws made in pursuance thereof, "shall be the supreme law of the land; and the judges in every State shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding." In the matter before us the act of Congress which provides that no exchange shall be allowed by the Reserve Bank for remitting for the collection of any check by any bank is in direct conflict with the statute of this State authorizing the paying bank to remit a lesser amount than the face amount of any check paid by it if presented by the Federal Reserve Bank. In this conflict of authority the Federal law is supreme. The injunction, therefore, was improvidently granted, and the judgment must be

Reversed.

ADAMS, J., not sitting.